Right, our third case is number 20-11958, Jeffrey Bell v. Sheriff of Broward County. Mr. Buschel, you're on mute. Thank you. May it please the court, I'm Robert Buschel, I represent the appellant Jeffrey Bell. The issue is whether Jeffrey Bell alleged he suffered an adverse employment action under the First Amendment for speaking out against the sheriff, sheriff's lack of personal protective equipment for frontline deputies early in the time of COVID. Sadly, over time, six members of the sheriff's office died from COVID, and the sheriff's response to the criticism was to continue to retaliate against the union president, Jeffrey Bell. The sheriff's response was designed to curtail Bell's speech in the hopes of being retaliation claim by taking actions short of eliminating Bell's play. Let me ask you a just a general factual question, or two of them actually. What is, since you had filed a suggestion of mootness, at least in part with regards to part of the case, I want to ask you this question. What is the status of Mr. Bell right now? He is still under investigation, quote unquote, under investigation. He is still the same actions occur. One, he's still under investigation as we speak. Two, he's excluded, the sheriff has excluded Jeffrey Bell from entering any sheriff's office building where union work is conducted, and that includes the 14 district offices of the sheriff's office. Third, he's ordered Bell to turn in his badge and law enforcement credentials. Effectively, he is relieved of duty. And fourth, in the sheriff's discretion, labeled Bell as not in good standing. So Bell cannot be designated a full-time paid union president. He is getting paid from another area of the budget, but I think the main question is what was the sheriff's action meant to do? And it was, before you get to the merits of your argument, I have my second factual question, which is at the time Mr. Bell filed his complaint, how long had he been suspended and under investigation? It was a matter of weeks. Okay. And I think the court also needs to understand there was a pending political campaign. The sheriff was running for sheriff Broward County. He was elected sheriff in November of 2020. So we have still a good six, seven months of Jeffrey Bell being quote unquote under investigation for policy violations relating to his speech. And is there the last question I promise, and then I'll let you get onto the merits of your argument. You're the judge. Judge, go ahead. No, that's okay. It doesn't mean we're getting it right all the time, but are there any administrative proceedings going on with Mr. Bell right now with regards to his investigation and suspension with pay and lack of credentials, et cetera, or is that just waiting for the sheriff's office to conclude whatever its processes? It's not concluding a process to be pessimistic. The answer is contingent upon this court's opinion in this case to give a straighter answer. I don't know what's taking so long. Typically according to a statute, the law enforcement officer bill of rights under chapter one, 12, five, three, four of Florida statutes, 180 days is sort of a statute of limitations. I understand that there are some, some suspension issues relating to COVID, but how long does it there's nothing that precludes the sheriff's office from reviewing all of these statements and coming to a conclusion, whether this was well within policy or not. Is Mr. Bell challenging his suspension and investigation in any administrative tribunal or scheme that is allowed to him or not? Well, the only time you can do it for administration is if there's discipline that is meted out. To answer a slightly, answering your question in a separate way, an unfair labor practice, which is not part of this first amendment record, was filed and the public employees relation commission known as PERC sustained that unfair labor practice, the act of suspending a union president because of speech. Those are my questions and you can have two more minutes of time. So when you hit red, you can go to a, to a negative two minutes for the time I've taken up for you. Okay. No, no. Thank you. Judge what the sheriff's action, what was the sheriff's action meant to do? It was to get Mr. Bell to stop talking during his campaign for sheriff. The intent was their question. The question is whether the action is sufficient. And we alleged enough for an evidentiary hearing. It was an important condition of his employment and would likely chill the exercise of perspective of protected speech, not just for Jeffrey Bell, but for others. It sends the message to other union members or anyone who takes his place in the meantime, see what happened to your president. I sent him home. He gets paid, but he's not allowed in the building. Now, who else has something to say critical of me? The sheriff. I think that this case is, can be resolved in the following way. This 11th circuit in Aikens versus Fulton County quote, any other conduct that alters employees, terms, conditions, or privileges of employment adversely affects his status as an employee. Uh, I think we start with, uh, uh, the court starts with a Pickering analysis and the Garcetti case talking about when public officials are able to, uh, speak, uh, uh, the district court below said that by, uh, by his status as union president, Jeffrey Bell was a private citizen speaking on behalf of a public issue that, uh, relating to COVID and, uh, personal protective equipment for the deputies. Then the court can go to, uh, the Aikens case I just cited to, uh, talking about how it does, it doesn't have to be full termination in order to affect, uh, one's privileges of employment. And then lastly, I think instructive is the Hoyt case from the second circuit, which talks about a union president being reassigned to, uh, a different, uh, area and prevented him from actually doing his job as union president, sir. I'm sorry. Is there a question? Nope. No, but I'm going to ask you one now. Okay. There are some circuits have said generally speaking, and I'm not saying that they dictate the outcome in this case, but some circuits have said in different employment contexts that a suspension with pay is generally not an I understand that here you are alleging more than just suspension with pay, but I want you to tell me a little bit about that theory that a suspension with pay doesn't really affect you adversely because you're receiving the money that you were entitled to under the terms of your employment. The sheriff's position is that pay is everything. Money is everything. And I think particularly in law enforcement and as union president, there's a calling, uh, money doesn't make up the entire job, but I think the court from a legal analysis can sit and must consider those are title seven cases talking about discrimination. And there are a list of cases that talk, uh, talk about not, uh, Aiken's case in the 11th circuit touches on it, that title seven cases are different than retaliation cases because retaliation cases, you're supposed to, is supposed to serve as a deterrent to stop, uh, uh, any type of job action because of speech, uh, because of, of, of, uh, we don't want to violate the substantive law. So it can be even greater and broader. And that's our contention is how the district court erred below the district court council. The problem with that argument is that we have, uh, two cases, uh, the Stavropoulos and the Aiken's case that say that, uh, first amendment retaliation, uh, must show not only the chill, but also the adverse employment act. Do we not have those cases? And therefore it's the same standard. I, I don't know. We do have those cases. I don't necessarily agree that, that, that I think there's more than just a pay here because you have two things. You have two statuses, two positions going on. You have Jeffrey Bell, the law enforcement officer who had to turn in his badge, who's been under investigation for over a year, and he's not allowed in any building and to mix with other union members or even speak to the command staff. So while the sheriff similar to judge Anderson's question, but I, and I think, I think this is kind of what we're trying to figure out. So you've got this sort of additional union issue here where maybe the suspension without most substantial with pay affected his ability as a union rep, but let's assume that that wasn't there. Um, what would, what would you be asking a court to do for you in this circumstance where you're someone who is a law enforcement officer, you're suspended with pay pending an investigation. What remedy could a court give you if, for example, the court said, you know what, I think, I think you're right. You were suspended with pay because of your speech. Um, what would the court be able to do for you in that? I think, I think at least, and I don't think the court needs to work too hard, remand this case to the district court and say they've alleged enough for an evidentiary hearing on a preliminary injunction. And that was denied. I think that's something very simple where the district court can say, you know what, yeah, something else is going on here because of the speech. He's the union president. And even if he weren't, uh, the district court below said he is a private citizen. Uh, he was speaking about a matter of public concern. He alleged that he's being retaliated against because of the first amendment. And that makes a suspension different than let's say, uh, with pay different than let's say the other cases which, oh, uh, you're under a criminal investigation or something else is being investigated besides a first amendment constitutional issue. Would you be asking the court to do in that preliminary injunction, just in the suspension with pay? That's just let him go. I mean, I, I guess that's my question. Like what would the reinstate reinstatement, the, the complaint asked for reinstatement. Uh, it says, uh, you know, prospectively stop the chilling threatening. There was a exhibit. One of the complaints says, if you go on this radio show and say all these things that we think are inaccurate, you're going to pay for that. So we have, we believe we have a strong record to provide the district court. And that's all the remedy that we seek. We're not asking for the court to, to read the record and saying you're a hundred percent. Jeffrey bell needs to be reinstated. We're just asking. I think the and now the court, the district court can say, wait a second. It's only been a few weeks. Initially. Now it's been over a year. Uh, that might change the flavor of things. Well, and that goes to another, I mean, and this kind of goes to another issue that I'd had with this theory that you can file one of these with suspension with pay is, I mean, it seems like you're filing it and necessarily the facts are going to change in a way that either gives you more talk to me, to complain about because you get terminated or, you know, something happens to you, or it just goes away and you were suspended with pay and turns out you were reinstated. It just seems at an odd point to file the litigation and say, that's what I'm complaining about because it's just kind of an intermediate process to get to something else. Well, I think that's up to the plaintiff to decide whether he has enough to at least demonstrate and allege enough. The facts in this are specific. It did happen quickly. He was suspended right after he gave a statement. We have the sheriff saying in a news conference, yes, I am talking about Jeffrey bell. Uh, he's clearly identifying what he's doing and saying that he's wants, uh, the, uh, the Jeffrey bell to account. He wants deputies that speak out for what he perceived as mistruths about the COVID crisis and the preparedness of the sheriff's office. He wanted them to account. Um, but most particularly there's a political campaign going on. He was running for sheriff and now he successfully squelched the voice of the union president that was supporting another, uh, another guy for that position. And so at that time it was, it was granted, but I, but you're correct. Over time things, either it turns into a fine wine or it dies on the vine. Thank you. Right. Thank you very much, Mr. Bush. Ms. Rodriguez. Good morning. May it please the court, Carmen Rodriguez for the sheriff of Broward County. My opposing colleague tells you that the court limited its analysis to pay. No, what the lower court did is limit its analysis to the allegations of the complaint. You see none of the adverse employment actions that the plaintiff bell is alleging before you were ever asserted before the lower court in the complaint, not a one. The only thing the complaint alleged in terms of any type of adverse action was uncertainty, uncertainty as to whether he can function as union president. What he's asking you to do is rewrite the complaint. So what was alleged was uncertainty. And in fact, as judge Jordan, uh, stated early in this case, they filed a suggestion of mootness. Well, we're not uncertain anymore. We understand he can function as union president and judge pressure to answer your question. What are they asking? They're asking for a new unity, sir. They're asking that you cannot even investigate me. So let's, let's talk about, well, that's not Mr. Rodriguez. I mean, I don't want to speak for Mr. Bushel, but I think that's an exaggeration because I don't read the complaint or at least the request for injunctive relief as stopping the investigation, but reinstatement after all, when he filed a complaint, it had only been about a week or so, I think since his suspension. And I think it would be unreasonable to ask an employer to stop an investigation after five days. Um, I don't know where you're getting the, the, the part about stopping the investigation from, but I didn't see that in the complaint. Well, judge, he was asking for an injunction, but you can ask, but you can ask for an injunction that is really, really narrow or really, really broad or somewhere in between. Well, in, if you look at count two, which is he asks for a, an injunction and that he cannot be disciplined the investigation, the other critical thing, but is that, but is that on preliminary injunction side or on the permanent injunction side? In other words, a complaint can ask a complaint. He did not seek damages in this case, right? He sought only declaratory and injunctive relief. And a complaint will generally ask for permanent injunctive relief. What you want to get, if you can prove everything going forward. And then if a plaintiff wants preliminary injunctive relief, he or she, or it has to file a motion for a preliminary injunction, right? Yes. I'm I'm again, from my perspective, and I may have missed something. I didn't see him asking for preliminary injunctive relief that stopped the investigation as opposed to the suspension, but maybe I'm wrong about that. But if we can't follow the policies and procedures that are consistent with our investigative processes, then you're really asking to be immune. And in this case, judge, it's particularly because the terms for a suspension are contained in the collective bargaining agreement. Judges, it is the collective bargaining agreement that Bell negotiated on behalf of the union. And it isn't a disputed fact. If you look at Docket Entry 1-7, which is the collective bargaining agreement he signed, he attached to his complaint, he signed it. How many employees have the ability to sit down with their employers and negotiate the terms of what it means to be under investigation? So really what, in this case, Bell never alleged that he was treated differently than any other deputy or sergeant in terms of the policies and procedures for internal investigation. He has some bizarre allegations now, which are really rewriting the complaint. Those policies and procedures for investigation are applicable to all deputies and sergeants. But this is not a labor case. He did not allege a claim under the CBA or a lack of fair representation by the union in a hybrid case. This is a constant. Whatever this case ends up in terms of results, this is not a labor case where he's challenging his treatment under the CBA. He's alleging that the sheriff's conduct violated the First Amendment. Whether that's right or wrong or not, it's a different case than a labor case. I'll tell you why it's relevant, Judge. It's relevant because irrespective of whether you look at this under the Burlington standard or under Stravopolis, what the First Amendment retaliation analysis requires us to do is find whether the employee was treated differently in some materially objective way. Was he subject to some adverse treatment? Was he treated differently? Where do you get that different treatment from? Let's say that an employer takes the worst possible employment action against somebody, but there's no one else to compare. That doesn't doom a First Amendment retaliation claim, right? I don't understand. You're saying there has to be a comparator, that he has to be treated differently than someone else for there to be adverse employment action? No, not at all. The language is in the collective bargaining agreement, which he himself incorporated, Judge. How he is to be treated is how everyone is to be treated, which is contained in the collective bargaining agreement, which he himself negotiated and signed. Now, what he's really coming to tell you is, I negotiated very specific conditions for what it means to be suspended under investigation. I spoke for all men and women that are deputies and sergeants for the Broward Sheriff's Office. I agreed to these terms. They're adopted in the collective bargaining agreement that I signed. And by the way, if I didn't agree, I had remedies under the Public Employee Relations Act. I could have declared impasse if I thought these policies were under investigation. So we have the standard of the similarly situated because it's the contract, that's how they're supposed to be treated. But his claim, but Ms. Rodriguez, I mean, you and I may just see the case differently from this perspective, but he's not claiming that he was treated improperly under the CPA. He's alleging that the sheriff's action against him is or whether or not he's right on the merits or not. It just seems to me that this is not a case about labor relations. But Judge, it goes back to how can you claim that the terms and conditions that you agreed to on behalf of everyone in the deputy and sergeants ranks when applied to you is now retaliation. So he's telling you, hey, it's good for the geese, but it's not good for the gander. Those are the agreed procedures, the promulgated, adopted procedures. Okay, wait, let me give you a really bad hypothetical. Sure. Completely removed from this case. Okay. A sheriff somewhere else in Florida with a very similar or identical CBA decides to open an investigation up against a deputy because she is a woman or because he is African American. Take your protected category, whatever protected category it is. That's the only reason. And let's say that that's undisputed. That's the only reason. And the person gets suspended with pay under investigation pursuant to the CBA. Okay. Has that person suffered an adverse employment action? No. So your argument is, and then I'll let you explain. So your argument is that if the employer takes action that is permitted by the relevant collective bargaining agreement as a matter of law, that can never be adverse employment action for a first amendment retaliation case. No. My point as to your hypothetical is that a suspension with pay pending investigation when an agency acts consistent with its policies and procedures for that investigation is not adverse action for purposes of retaliation. And that's just, that's just what I said. So you're saying you're saying if an employer suspends, no matter what the reason, no matter how illegitimate, if the suspension is pursuant to the collective bargaining agreement, then whatever happens to the employee can never be adverse employment action under the first amendment. No, I don't understand that. I do not object with the, whatever happens to the employee because the predicate of the question, look, you know, whatever the reason, whatever the reason for the investigation. So if you, if you, if you have a right, my position judge, our position is that consistent with the great number of circuits, a suspension with pay pending investigation when an agency acts consistent with its policies and procedures is not an adverse employment action for purposes of retaliation claim. If I may explain that holding and look, it's very evident from some of the recent decisions including Smith versus Greensboro, Tom Kiro, that the court is inclined to adopt and sees reasons to adopt the Burlington standard. It doesn't matter in this case, a holding consistent with what I've stated about the ability to suspend with pay is entirely consistent with Burlington. Burlington requires that the suspension without pay, but the sixth circuit en banc decision in Burlington decided that a 37 day suspension without pay was not an adverse action. But in that decision, the sixth circuit also addressed an argument made by the Equal Employment Advisory Council that employers must be able to an investigation without facing the risk of title seven liability. The sixth circuit noted that such concerns was allayed by its decision in Jackson versus Columbus in which it held that a suspension with pay and benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action. How about if the CBA allows for a suspension without pay, would that be adverse employment action? Yes. Potentially, yes. And it doesn't matter what the CBA says. It does, Your Honor. It does in that the CBA gives you the objective framework of what was considered to be the applicable standard when what it means to be that you're suspended with pay. I know, but my hypothetical is... There's an additional complication here, Judge, that is very important. And that is Florida statute 112533 and 112532. Because you see, under Florida statute, the internal affairs investigation must be held confidential. It's confidential. You can't talk about it. This is why we can't talk about it. Let me ask you to go back to the CBA, because I think the CBA may be relevant in this regard. And so I want to see if I'm getting you right, is that the CBA tells you when you're going to get to the point of an adverse employment action happening. So if the CBA sets out this process that says, the first thing we're going to do is suspend you with pay, and then we're going to do this, and then we're going to do this, and then we're going to do this, then that can inform a court to say, look, if you're following the CBA, we know that you're not having an adverse employment action because you haven't reached that point yet. Is that what you're saying? Yes, Judge, because once you're suspended without pay, you have grievance rights. That's absolutely right. So if you have Mr. Bell negotiating, Deputy Bell negotiating these contracts, these are the things that he believes are fair, appropriate, and reasonable for a deputy who goes under suspension and now tells you, oh, just not to me. Well, what he's asking, if those procedures don't apply to him, what he's asking you to do is confer immunity, immunity, even from investigation. And I will tell you... One more question. One more question, Ms. Rodriguez. Does it matter how long the suspension with pay is in terms of considering whether it constitutes or doesn't constitute adverse employment action? In other words, if he had been on suspension with pay for two years, what's the result? I don't think there's a bright line, and it may depend on the circumstances of that. And it has to do with a question that you asked my opposing colleague, but it may. And certainly all of the cases that... And the greater number of circuits have held that a suspension with pay pending an investigation does not constitute an adverse employment action, even under the Burlington standard. In fact, even Burlington, at footnote eight, Burlington also refers to the National Employment Lawyers Association, an amicus brief filed on behalf of the plaintiff in that case, where they conceded that a suspension with pay, pending a timely investigation, doesn't constitute an adverse employment action, and actually says that that's what it recommends to employers. But the answer on your question, judges, all of the cases do say that it has to be reasonably timely. But that's not this case. And what this case does come down to is what were the allegations of the complaint? What was the lower court? None of this parade of horribles was alleged. The only adverse action alleged wasn't even adverse action. All they said was we were uncertain, uncertain about whether it had any effect on him as union president. And then the suggestion of mootness before you says, oh, we get it now. He can be union president. We know that because we responded to the mootness by attaching the myriad of articles where Bell was, in fact, acting as union president. He was continuing to speak to the media. He was doing everything that he otherwise did. And the full release position, again, is pursuant to the collective bargaining agreement. It does not refer to union president. The lower court specifically found that nothing was alleged, even what he attached, affected his role as union president. And the suggestion of mootness says, oh, you're right, the uncertainty we had, we don't have it anymore. Okay, Miss Rodriguez, thank you very, very much. Thank you. Mr. Bushel, you've got three minutes of rebuttal time. You're muted again, sir. Thank you. May it please the court. The sheriff's office just advised this court that a secret investigation trumps the First Amendment, that the fair response to a First Amendment retaliation claim clearly laid out in the complaint is he's secretly under investigation. But for what? And for how long? They do not even say. But even if we played that out, and we said, okay, please go to the district court and ex parte, tell him what he is under investigation for the court, the district court can make that decision. And why should the district court do that, Mr. Bushel, given the short amount of time? Let me just say I'm sympathetic to the if it's really, really, really long, can be an adverse employment action, right? I don't think you can string out an employee for two or three or four years and just leave him or her hanging out there. But in this case, the complaint was filed within a week or so of the suspension with pay. And why would we want a district court to short circuit the CBA process in that sort of circumstance, by jumping in without giving the sheriff some time to do an investigation? Because the context is key here. There's a camp political campaign going on. And he is the designated voice, the union leader, the president of the union. And to harken to what Judge Anderson was saying about the Aikens case and the Stravopolis case, it says to be considered an complaint of action must involve an important condition of employment. We have several exhibits attached to this complaint. It says you're not allowed in the building, Mr. Bell, you have lost your good standing as union president that caused confusion that caused confusion. He's union president, but he's not allowed to talk to the command staff. He's not allowed to meet with go to any district office and speak to a captain and say, can we work this issue out? Unions and labor and management should be an ongoing mediation, an ongoing collective bargaining discussion. That's the purpose of it all. So we always don't have to go to arbitration or court. The collective bargaining agreement does not contemplate First Amendment rights of the union president. Pickering, Garcetti does. And now I think Aikens does. And I think a concession that Burlington applies to retaliation cases. I think the couple of Second Circuit cases we cited Hoyt and the District of Rhode Island, who supplemented a recent case from February prevails, makes Jeffrey Bell's argument prevail. Thank you. All right. Thank you both very much.